**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| FORD MOTOR CREDIT COMPANY LLC<br><br>Plaintiff,<br><br>vs. | ) | |
| | ) | Case No.: ____________ |
| EDDIE GILSTRAP MOTORS, INC.,<br>WITHERS AUTOMOTIVE WORLDWIDE, INC.,<br>and MARCUS WITHERS, individually, and<br>STELLANTIS FINANCIAL SERVICES, INC.,<br><br>Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND REPLEVIN**

Plaintiff FORD MOTOR CREDIT COMPANY LLC ("Ford Credit"), by and for its *Complaint for Damages and Replevin* against EDDIE GILSTRAP MOTORS, INC. ("Gilstrap Motors" or "Dealer"), WITHERS AUTOMOTIVE WORLDWIDE, INC. ("Withers Automotive"), and MARCUS WITHERS, individually ("Mr. Withers"), and STELLANTIS FINANCIAL SERVICES, INC. ("Stellantis"), alleges as follows:

**NATURE OF THE ACTION**

1. Ford Credit brings this action to, among other things: enforce its rights as a secured creditor under Ford Credit's agreements with Gilstrap Motors; recover indebtedness that Gilstrap Motors owes to Ford Credit under its wholesale financing and capital loan agreements; obtain possession of collateral that is subject to Ford Credit's first-priority, properly-perfected security interest; and enforce guaranties made to Ford Credit by both Withers Automotive and Mr. Withers.

2. Gilstrap Motors is in default, having breached its agreements with Ford Credit by, among other things, selling or transferring vehicles subject to Ford Credit's security interest without remitting required payments to Ford Credit, failing to pay other amounts owed to Ford Credit as and when they have become due, and failing to pay the amounts duly demanded by Ford Credit after those defaults.

3. Ford Credit has repeatedly demanded that Gilstrap Motors pay Ford Credit the balances due under its financing agreements with Ford Credit, but Gilstrap Motors has failed to do so.

4. Ford Credit has also demanded that Gilstrap Motors surrender vehicles and other items of collateral that are subject to Ford Credit's security interest, but Gilstrap Motors has refused and failed to do so.

5. Ford Credit has further demanded that guarantors Withers Automotive and Mr. Withers pay Ford Credit the amounts owed to it, but they have refused and failed to do so.

## THE PARTIES

6. Ford Credit is a limited liability company organized under the laws of the State of Delaware, and is authorized to do business in Indiana.

7. Ford Credit's sole member is Ford Holdings LLC, a limited liability company organized under the laws of the State of Delaware, with a principal place of business located at One American Road, Dearborn, Michigan 48126.

8. The sole member of Ford Holding LLC is Ford Motor Company, a Delaware corporation with its principal place of business in Dearborn, Michigan.

9. Ford Credit's principal place of business is located at One American Road, Dearborn, Michigan 48126.

10. Because a limited liability company is a citizen of every state of which its members are citizens, Ford Credit is therefore a citizen of Delaware and Michigan for purposes of 28 U.S.C. § 1332.

11. On or about April 20, 2007, Ford Motor Credit Company converted from a Delaware corporation to a Delaware limited liability company pursuant to Sections 228 and 266 of the Delaware General Corporation Law. This conversion was effective on May 1, 2007, and, pursuant to the relevant statutes, Ford Motor Credit Company LLC is deemed the same entity as Ford Motor Credit Company by operation of law. Copies of Ford Credit's conversion filings with the U.S. Securities and Exchange Commission, including its Certificate of Conversion, are attached as **Exhibit A**.

12. Accordingly, for jurisdictional purposes, Ford Credit is a citizen of Delaware and Michigan.

13. Gilstrap Motors is a corporation organized under the laws of the State of Indiana, with its principal place of business located at 207 S. Main Street, Salem, Indiana 47167.

14. Accordingly, for jurisdictional purposes, Gilstrap Motors is a citizen of Indiana, and is subject to personal jurisdiction in Indiana.

15. Withers Automotive is a corporation organized under the laws of the State of Kentucky, with its principal place of business located at 3801 Billtown Road, Suite 99602, Louisville, Kentucky 40245.

16. For jurisdictional purposes, Withers Automotive is a citizen of Kentucky, but is subject to personal jurisdiction in Indiana.

17. Mr. Withers is a natural person domiciled in Kentucky, residing at 2116 Club Vista Pl., Louisville, Kentucky 40245-5224.

18. For jurisdictional purposes, Mr. Withers is a citizen of Kentucky, but is subject to personal jurisdiction in Indiana.

19. Stellantis is a corporation organized under the laws of the State of Texas, with a principal place of business at 5757 Woodway Drive, Suite 400, Houston, Texas 77057.

20. Accordingly, for jurisdictional purposes, Stellantis is a citizen of Texas, but is subject to personal jurisdiction in Indiana.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332(a), as there exists complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

22. The Court has personal jurisdiction over Gilstrap Motors because it is incorporated in and maintains its principal place of business in Indiana.

23. The Court has personal jurisdiction over Withers Automotive and Mr. Withers because they are doing business in Indiana and have guaranteed the indebtedness of Gilstrap Motors as described below.

24. The Court has personal jurisdiction over Stellantis because it is doing business in Indiana with Gilstrap Motors as explained below.

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because: (a) a substantial part of the events, omissions, and transactions giving rise to the

claims occurred in Washington County, Indiana; and (b) the property that Ford Credit seeks to replevin is located within Washington County, Indiana.

## THE AGREEMENTS BETWEEN FORD CREDIT AND GILSTRAP MOTORS

### A. The Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement

26. On or about August 8, 1984, Gilstrap Motors executed and delivered to Ford Credit an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement (the "Wholesale Agreement"). A copy of the Wholesale Agreement is attached as **Exhibit B**.

27. Gilstrap Motors executed the Wholesale Agreement to induce Ford Credit to extend a wholesale line of credit (to be used by Gilstrap Motors to finance its acquisition of new and used vehicles, a type of financing commonly known as floorplan financing) and to provide other financing accommodations.

28. Amounts advanced by Ford Credit pursuant to the Wholesale Agreement are called "Advances." *Id.* at ¶ 1.

29. Gilstrap Motors agreed "to pay Ford Credit, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus Ford Credit's interest and flat charges with respect thereto ...." *Id.* at ¶ 3.

30. In exchange for the financing provided under the Wholesale Agreement, Gilstrap Motors granted Ford Credit a security interest in, among other collateral, the motor vehicles financed, their proceeds, and rebates or refunds owed to Gilstrap Motors. *See id.* at ¶ 4.

31. Upon an Event of Default, Ford Credit was entitled to accelerate, and declare immediately due and payable, any or all of the unpaid Advances, plus accrued interest and

flat charges, and to take immediate possession of all property in which it has a security interest.

32. In the event that Ford Credit was required to resort to legal process to enforce its rights under the wholesale agreement, Gilstrap Motors agreed "to pay reasonable attorneys' fees and legal expenses incurred by Ford Credit in connection with the repossession and sale" of its collateral.

**B. <u>The Security Agreement</u>**

33. On or about February 19, 1991, Gilstrap Motors executed and delivered a Security Agreement to Ford Credit (the "Security Agreement"). A copy of the Security Agreement is attached as **Exhibit C**.

34. Pursuant to the Security Agreement, Gilstrap Motors granted Ford Credit a security interest in the following collateral and the proceeds thereof:

> (a) All equipment, fixtures, furniture, demonstrators and service vehicles, supplies and machinery and other goods of every kind.
>
> (b) All motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto.
>
> (c) All accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto.

35. The term "Collateral" will be used throughout the remainder of this Complaint to refer collectively to all property, accounts, papers, rights, and proceeds in which Gilstrap Motors granted Ford Credit a security interest under the Wholesale Agreement and/or the Security Agreement, and in which Ford Credit has a first-priority, properly-perfected security interest as of the date of this filing.

**C. Wholesale Continuing Guaranty**

36. On or about May 8, 2024, Withers Automotive and Mr. Withers (the "Guarantors") executed and delivered to Ford Credit a Kentucky Continuing Guaranty (the "Wholesale Guaranty"). A copy is attached as **Exhibit D**.

37. The Wholesale Guaranty was expressly made "to induce [Ford Credit] to make loans to and/or make advances" to Gilstrap Motors under the Wholesale Agreement, and "to purchase or otherwise acquire retail installment sale contracts, conditional sale contracts, chattel mortgages or other security instruments, or to otherwise extend credit to or do business with" Gilstrap Motors.

38. Under the Wholesale Guaranty, Withers Automotive and Mr. Withers "jointly and severally, and unconditionally" agreed to:

> [F]ully, promptly, and faithfully perform, pay and discharge all Dealer's present and future obligations to you; and agrees, without your first having to proceed against Dealer or to liquidate paper or any security therefore, to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorneys' fees or expenses which you may suffer by reason of Dealer's default, and agrees to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice to us; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from us.

*See* Exhibit D.

**D. Master Loan and Security Agreement**

39. On or about May 9, 2024, Gilstrap Motors executed and delivered to Ford Credit a Master Loan and Security Agreement for Capital Loan No. 1125504 (the "Capital Loan" and "Capital Loan Agreement"). A copy is attached as **Exhibit E**.

40. Under the Capital Loan Agreement, Gilstrap Motors again granted Ford Credit a blanket security interest in its personal property, including equipment, fixtures,

furniture, demonstrators and service vehicles, supplies, machinery, motor vehicles, tractors, trailers, implements, service parts and accessories, inventory, accounts, instruments, chattel paper, general intangibles, contract rights, and documents, and supporting obligations. *Id.* at ¶¶ 1(b) and 4.

41. The Capital Loan Agreement defined Events of Default to include payment defaults on the Capital Loan, as well as defaults under any other agreement between Gilstrap Motors and Ford Credit.

42. Upon an Event of Default, Ford Credit was entitled to accelerate the unpaid indebtedness on the Capital Loan, take possession of the Collateral, and exercise any other remedy available to a secured party.

43. As of October 5, 2026, the Capital Loan had a principal balance of approximately $1,135,240.36, and at least one payment on that loan was past due.

**E. <u>The Capital Loan Guaranty</u>**

44. On or about May 9, 2024, Withers Automotive executed and delivered a Continuing Guaranty and Security Agreement to Ford Credit, in which Withers Automotive guarantied the "due and punctual payment" of the Capital Loan (and other obligations under the Capital Loan Agreement). A copy is attached as **Exhibit F**.

**<u>THE COLLATERAL AND FORD CREDIT'S SECURITY INTEREST</u>**

45. The Collateral includes the vehicles identified in the listing that is attached as **Exhibit G**, which is current through October 22, 2026.

46. The Collateral also includes, without limitation, Gilstrap Motors' parts, equipment, accounts, chattel paper, general intangibles, contract rights, documents, supporting obligations, and proceeds.

47. Ford Credit has a first-priority, properly-perfected security interest in the Collateral that it perfected by a blanket UCC filing dated February 22, 1991, and which Ford Credit has continued through February 22, 2031 by timely filing continuations and amendments since its initial filing. *See* **Exhibit H**.

48. Stellantis has a security interest with respect to certain property held by Gilstrap Motors, with the respective rights of Ford Credit and Stellantis defined in an Intercreditor Agreement dated August 28, 2024. Stellantis is named as an interested party defendant in this action as a result, but Ford Credit is seeking replevin only as to Collateral in which it holds the first-priority, unsubordinated security interest.

**DEFAULTS BY GILSTRAP MOTORS**

49. On or about September 28, 2026, a wholesale inventory audit conducted on behalf of Ford Credit identified twenty-seven (27) vehicles, with outstanding balances totaling $1,016,245, which Gilstrap Motors reported having "sold" in the days preceding the audit.

50. Ford Credit has learned that a number of these vehicles were transferred to wholesalers (rather than sold to individual retail customers), with multiple vehicles transferred at the same time, for alleged payment amounts that were, in multiple instances, significantly below market value (payments which Ford Credit has been unable to independently verify were actually made).

51. Upon information and belief, these purported "sales" were not made in the ordinary course of business by Gilstrap Motors.

52. Gilstrap Motors made post-audit payments to Ford Credit totaling $500,000, but did not pay an additional $412,000 as and when that amount became due. As

a result, that amount became out of trust, and Gilstrap Motors was in default under its agreements with Ford Credit.

53. A Dealer is out of trust, or has vehicles "sold out of trust," when it has sold financed vehicles without paying the amounts due to its floorplan financing lender as and when those amounts became due.

54. A further vehicle inventory audit, conducted on October 1, 2026, identified additional sold out of trust vehicles, resulting in an additional out of trust amount totaling $928,203.

55. Gilstrap Motors' out of trust amount increased further after an additional seven (7) out of trust units were identified after that audit, and still further after an electronic funds transfer sent by the Dealer to Ford Credit, in the amount of $51,125, was returned for insufficient funds.

56. As a result of these defaults, Ford Credit secured keys, titles, and MSOs to vehicles constituting a portion of its Collateral, and suspended Gilstrap Motors' wholesale financing.

57. As of October 5, 2026, Gilstrap Motors' Sold-Out-of-Trust amount totaled $1,402,282.09.

58. Ford Credit subsequently accelerated the indebtedness owed by Gilstrap Motors under the Wholesale Agreement and Capital Loan Agreement, and also increased the interest rates on the same, as provided for in its agreements with the Dealer.

59. On October 5, 2026, Ford Credit sent demand letters to both the Dealership and Guarantors, demanding payment of the entire amount then outstanding and

owed to Ford Credit, totaling $5,927,772.96. Copies of those demand letters are attached as **Exhibit I**.

60. Ford Credit sent further, revised demand letters to both the Dealership and Guarantors on October 8, 2026, again demanding payment of the entire amount then outstanding and due to Ford Credit, totaling $5,835,060.48. Copies of those demand letters are attached as **Exhibit J**.

61. Gilstrap Motors and the Guarantors have failed to pay the amounts demanded, and Gilstrap Motors has refused to surrender Ford Credit's Collateral.

62. As result, Gilstrap Motors remains in breach of the Wholesale Agreement, the Security Agreement, and the Capital Loan Agreement, and the Guarantors remain in breach of their respective guaranties.

63. As of October 21, 2026, the amounts due and owing to Ford Credit include the following:

| | |
|---|---|
| Wholesale Credit Lines as of October 21, 2026: | $ 4,155,387.90 |
| Wholesale Charges Owed as September 30, 2026: | $78,961.47 |
| Est. Oct. Wholesale Charges Owed for MTD as of October 21, 2026: | $19,991.10 |
| Ford Credit Capital Loan #1125504 as of October 21, 2026: | $1,140,208.90 |
| Unperfected Liens: | $79,150.00 |
| Estimated PAS Expenses / On-Site Security: | $35,353.12 |
| Legal Fees: | $19,175.00 |
| 3 Open FMCC Accounts (64010230, 64588976, 64659222) – Payoffs good through October 31, 2026: | $204,361.31 |
| 2 Unpaid FMCC Trade-Ins (58673226, 63435028) – Payoffs good through October 31, 2026: | $20,769.69 |
| Total Amount Due: | $5,753,358.49 |

**FIRST CAUSE OF ACTION**

**(Replevin/Claim and Delivery of Collateral – Gilstrap Motors)**

64. Ford Credit realleges and incorporates by reference the foregoing paragraphs.

65. Despite Ford Credit's demands that Gilstrap Motors cure its defaults, pay all amounts due, and surrender the Collateral, Gilstrap Motors has not done so.

66. Gilstrap Motors continues to hold and possess the Collateral, including the vehicles listed in Exhibit H, which are subject to Ford Credit's first-priority, properly-perfected security interest.

67. The Collateral also includes parts, equipment, accounts, chattel paper, general intangibles, and proceeds that are also subject to Ford Credit's first-priority, properly perfected security interest.

68. Under the Wholesale Agreement, Security Agreement, and Capital Loan Agreement, and pursuant to Indiana Code 32-35-2, as applicable in federal court under Federal Rule of Civil Procedure 64, Ford Credit is entitled to immediate possession of the Collateral.

69. Ford Credit has demanded surrender of the Collateral, but Gilstrap Motors has refused to surrender, and continues to detain, the Collateral.

70. The Collateral has not been taken for a tax, assessment, or fine under a statute, and has not been seized under an execution or attachment against Gilstrap Motors's property.

71. The Collateral is located in Washington County, Indiana.

72. The aggregate estimated value of the vehicles listed in Exhibit H is approximately $4,644,944.21, and the total value of Ford Credit's Collateral is estimated to be $4,790,944.21.

WHEREFORE, Plaintiff Ford Motor Credit Company LLC requests that this Court:

a) Enter a final judgment granting Ford Credit immediate possession of the Collateral;

b) Order Gilstrap Motors to deliver the Collateral to Ford Credit;

c) Award Ford Credit its attorneys' fees and costs of collection incurred to enforce its right to possession; and

d) Award Ford Credit such other and further relief as the Court deems just and proper.

**<u>SECOND CAUSE OF ACTION</u>**

**(Breach of Wholesale Financing Agreement – Gilstrap Motors)**

73. Ford Credit realleges and incorporates by reference the foregoing paragraphs.

74. Gilstrap Motors breached the Wholesale Agreement by selling or transferring vehicles subject to Ford Credit's security interest without paying Ford Credit the required advances and proceeds, by failing to pay other amounts as and when due, and by failing to pay after Ford Credit's demands for the same.

75. Gilstrap Motors's failures constitute breaches of the Wholesale Agreement.

76. Interest continues to accrue on the unpaid financing under the Wholesale Agreement, including interest at the contractual default rate.

77. As a result, Ford Credit has been damaged in an amount to be proven at trial, but not less than $5,753,358.49, plus interest, fees (including attorneys' fees), and costs to the extent recoverable under the agreements and applicable law.

WHEREFORE, Ford Credit respectfully requests that the Court grant judgment in its favor against Gilstrap Motors for amounts due under the Wholesale Agreement, which are not less than $5,753,358.49, together with interest, fees (including attorneys' fees), costs, and other relief the Court deems proper.

## THIRD CAUSE OF ACTION

**(Breach of Capital Loan Agreement – Gilstrap Motors)**

78. Ford Credit realleges and incorporates by reference the foregoing paragraphs.

79. Gilstrap Motors executed the Capital Loan Agreement, and granted Ford Credit a blanket security interest in the Collateral, to secure payment of the Indebtedness and performance of its obligations.

80. Gilstrap Motors defaulted under the Capital Loan Agreement by failing to pay amounts due under that agreement as and when they became due.

81. Ford Credit has accelerated the unpaid amount owed on the Capital Loan.

82. The Capital Loan principal balance, as of October 21, 2026, is $1,140,208.90.

83. Gilstrap Motors has not paid the amount due on the Capital Loan despite Ford Credit's due demand for the same.

84. Gilstrap Motors is, therefore, in default under the Capital Loan Agreement, and Ford Credit is entitled to recover the unpaid indebtedness on the Capital Loan, together with interest, and its fees (including attorneys' fees), costs, and expenses of recovering the same.

WHEREFORE, Ford Credit respectfully requests that the Court grant judgment in its favor against Gilstrap Motors for amounts due under the Capital Loan, not less than the amounts alleged above and included in the total demand of $5,753,358.49, together with interest, attorneys' fees, costs, and other relief the Court deems proper.

## FOURTH CAUSE OF ACTION

**(Breach of Guaranties – Withers Automotive and Marcus Withers)**

85. Ford Credit realleges and incorporates by reference the foregoing paragraphs.

86. Ford Credit made written demands for payment on the Guarantors on October 5, 2026 and October 8, 2026.

87. Guarantors have not paid the amounts demanded and have thereby breached their guaranties to Ford Credit.

88. Ford Credit is, therefore, entitled to judgment against the Guarantors on their guaranties, and to recover the entire amount of the indebtedness from them without first having to proceed against Gilstrap Motors.

WHEREFORE, Ford Credit respectfully requests that the Court grant judgment in its favor against Withers Automotive and Mr. Withers on their guaranties, in the amount of $5,753,358.49, together with interest, for Ford Credit's fees (including attorneys' fees), costs, and expenses, and for such other and further relief the Court deems proper.

**JURY DEMAND**

89. Ford Credit hereby demands a trial by jury on all issues so triable.

Dated: October 22, 2026

Respectfully submitted,

*/s/ Harley K. Means*

Harley K. Means, Atty. No. 23068-32
Sarah R. Pfister, Atty. No. 39820-32
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125
(317) 692-9000 Telephone
(317) 264-6832 Fax
hmeans@kgrlaw.com
spfister@kgrlaw.com

*Attorneys for Plaintiff*
*Ford Motor Credit Company LLC*